# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br>INDIRA PREDEOUX<br><br>*Defendant(s)* | ) ) ) ) ) ) ) Case No. 21-mj-1693 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **Sept. 1 to Dec. 5, 2016** in the county of **Delaware** in the **Eastern** District of **Pennsylvania**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 2 | Aiding and abetting |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

/s T. Sean Norman
*Complainant's signature*

T. SEAN NORMAN Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/05/2021

/s Honorable Carol S. Moore Wells
*Judge's signature*

City and state: Philadelphia, PA

Honorable Carol S. Moore Wells
*Printed name and title*

## **Affidavit**

I, T. Sean Norman, being duly sworn, depose and state as follows:

1.      I am employed as a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed by this agency for sixteen years, and I have fifteen years of experience in the investigation of fraud-related offenses. I am presently assigned to the Economic Crime squad in the Philadelphia Field Office, which is tasked with investigating financial crimes, among other violations of Federal law.

2.      The information within this Affidavit is based upon my personal experience, knowledge and observations, as well as witness interviews, review of bank and phone records, and information supplied to me by TransUnion LLC ("TransUnion"), TD Bank and other financial institutions. What follows is not all of the information I have uncovered during my investigation.

3.      TransUnion, Experian and Equifax ("the Credit Bureaus") are the three primary consumer credit reporting agencies in the United States. The Credit Bureaus each collect and maintain consumer credit information gathered from creditors, debt collection agencies and public records, among others.

   a. The information gathered by the Credit Bureaus is assembled into a formula that generates an overall evaluation of each consumer's credit worthiness, commonly referred to as a credit report.

   b. The Credit Bureaus then sell the credit report and related data to their customers, including banks and credit companies, who use the information to make credit approval and pricing decisions for their own customers.

4.      TransUnion maintained consumer credit history information in a database on computers that were used in interstate commerce. The database was stored at TransUnion's headquarters in Chicago, Illinois, but could be accessed via computer from other TransUnion offices.

5.      TransUnion maintained an office in the United States in the Eastern District of Pennsylvania, specifically, Crum Lynne, Delaware County, Pennsylvania. This TransUnion office received consumers' disputes concerning errors in their credit history. The disputes were submitted to TransUnion via phone, facsimile and mail, with TransUnion logging and imaging all of the dispute documents received from the consumer. Employees at this location were tasked with evaluating and investigating disputes and making corrections to consumer credit history, when necessary.

6.      TransUnion did not authorize its employees to delete or alter any accurate or undisputed credit history information. TransUnion did not authorize its employees to access any consumer credit information unless they were making authorized changes to consumer credit history.

7.      During 2016, INDIRA PREDEOUX was employed by TransUnion at its dispute resolution office in Crum Lynne, Pennsylvania.

   a. In May 2016, PREDEOUX was given access to the database containing TransUnion consumer credit history information. At that time, any changes PREDEOUX wished to make to a consumer's credit history information needed to go through a quality control process prior to taking effect.

2

b. In September 2016, PREDEOUX received a promotion from TransUnion that allowed her to make changes to a consumer's credit history information without those changes being reviewed and approved by TransUnion's quality control process.

### TD Bank and TransUnion Investigation

8. On or about January 4, 2017, I met with TD Bank investigators in Mount Laurel, New Jersey, regarding a joint investigation they were conducting with TransUnion. The investigation related to numerous recent fraudulent TD Bank automobile loans that originated from a car dealership in the Atlanta, GA area. TD Bank investigators provided the following information during the meeting:

a. TD Bank exclusively used TransUnion credit reports when evaluating its auto loan applications.

b. During November and December 2016, TD Bank had an unusually high volume of auto loans originating from a luxury car dealership in the Atlanta area.

c. A TD Bank quality control review of the auto loan files found that the TransUnion credit reports in those loan files often showed drastically higher credit scores when compared to other prior TransUnion credit reports prepared for the same borrowers.

d. TD Bank began working with TransUnion investigators to identify the reason for the discrepancies.

3

9. TransUnion investigators later determined that INDIRA PREDEOUX, an employee in their Crum Lynne, Pennsylvania dispute resolution office, had made changes to all the applicants' consumer credit histories for the questioned TD Bank auto loans, including the TD Bank auto loans listed below. Furthermore, none of these credit history changes performed by PREDEOUX were supported by documentation in TransUnion's record keeping system.

| Loan Holder | Date TransUnion Data was Altered | Summary of TransUnion Information that was Altered | Increase in Credit Score | Amount of TD Bank Loan | Status of Loan |
| --- | --- | --- | --- | --- | --- |
| H.S. | 12.05.16 | $51,488 decrease in outstanding balances | 84 | $68,177 | In repossession, $57,422 not paid |
| A.N. | 12.01.16 | 13 inquiries deleted, $16,208 decrease in outstanding balances | 0 | $93,770 | In repossession, $89,728 not paid |
| R.S. | 11.21.16 | 8 inquiries deleted, $3,345 decrease in outstanding balances, 2 accounts changed from derogatory to non-derogatory | 154 | $170,980 | In repossession, $179,564 not paid |

10. Additional investigation by TransUnion revealed that INDIRA PREDEOUX made similar, unsupported consumer credit history changes to additional consumer credit histories, beyond those who were reported by TD Bank.

11. TransUnion investigators noted that the consumer credit history changes made by INDIRA PREDEOUX, which included removing derogatory items and increasing available credit amounts for existing credit accounts, typically caused substantial increases to each consumer's credit score.

12. In total, TransUnion investigators found that, from September 1, 2016 through December 5, 2016, INDIRA PREDEOUX made unsupported consumer credit history changes to at least approximately 80 unique consumer credit profiles. According to the TransUnion investigators, the data that INDIRA PREDEOUX altered was stored and backed up at the TransUnion data center at TransUnion headquarters in Chicago, Illinois. Thus, each of those unsupported consumer credit history changes made by PREDEOUX was transmitted, via wire, from the TransUnion location in Crum Lynne, Delaware County, Pennsylvania to the TransUnion data center in Chicago, Illinois.

13. On December 6, 2016, INDIRA PREDEOUX abruptly left her job at TransUnion, telling a co-worker her grandmother was sick and PREDOUX had to leave. PREDEOUX never returned to TransUnion after that date.

**Interview of Indira Predeoux**

14. On June 16, 2017, INDIRA PREDEOUX visited the FBI's Philadelphia Field Office for a voluntary interview. The information provided by PREDEOUX during the interview included the following:

> a. PREDEOUX was introduced to Co-Conspirator 1 ("CC1") and Co-Conspirator 2 ("CC2"), who ran a credit repair business, through a mutual friend.

5

b. During 2016, CC1 and CC2 recruited PREDEOUX to make fraudulent changes to TransUnion consumers' credit history information that were not supported by legitimate documentation.

c. During the time PREDEOUX was working with CC1 and CC2 between September and December 2016, she made fraudulent changes to approximately 30 consumer credit histories per week.

d. When CC1 or CC2 wanted PREDEOUX to make a change to someone's credit history, they usually sent text messages to PREDEOUX in the morning containing the Social Security numbers for the credit histories to be altered, along with the specific changes requested for each credit history. They often pressured PREDEOUX, telling her their customers were applying for an important loan and needed the changes made as soon as possible.

e. CC1 and CC2 paid PREDEOUX for the fraudulent TransUnion credit history alterations using Square Cash wire transactions and by depositing cash into PREDEOUX's PNC Bank account. All payments received by PREDEOUX from CC1 and CC2 were for her fraudulent alteration of consumers' credit histories at TransUnion.

f. PREDEOUX became so emotionally stressed from the constant requests from CC1 and CC2 that she abruptly left her job at TransUnion in December 2016 without telling her supervisor why she was leaving.

**Additional Records Reviewed**

15.     I have reviewed records received from Square Inc., including documentation relating to Square Cash accounts owned by INDIRA PREDEOUX, CC1 and CC2. Those records show that, between approximately September 1, 2016 and December 6, 2016, a Square Cash account in the name of CC1, with a cell phone number of 973-207-2645, and a Square Cash account in the name of CC2, with a cell phone number of 336-912-2286, made approximately $17,900 in payments via wire transfer, to PREDEOUX's Square Cash account, including the following:

| Payor | Date of Payment | Amount of Payment |
|---|---|---|
| CC1 | 09.01.16 | $1,500 |
| CC1 | 09.06.16 | $600 |
| CC1 | 09.07.16 | $300 |
| CC1 | 09.09.16 | $600 |
| CC1 | 09.14.16 | $900 |
| CC2 | 09.16.16 | $300 |
| CC2 | 09.21.16 | $300 |
| CC2 | 09.22.16 | $600 |
| CC1 | 09.22.16 | $600 |
| CC1 | 10.14.16 | $1,800 |
| CC1 | 10.25.16 | $300 |
| CC1 | 10.27.16 | $600 |

| Payor | Date of Payment | Amount of Payment |
|---|---|---|
| CC1 | 10.31.16 | $300 |
| CC1 | 11.01.16 | $1,200 |
| CC1 | 11.05.16 | $1,000 |
| CC1 | 11.09.16 | $600 |
| CC1 | 11.11.16 | $300 |
| CC1 | 11.12.16 | $1,000 |
| CC2 | 11.17.16 | $300 |
| CC2 | 11.18.16 | $600 |
| CC2 | 11.21.16 | $1,100 |
| CC2 | 11.22.16 | $400 |
| CC1 | 11.25.16 | $1,500 |
| CC2 | 12.06.16 | $1,000 |

16. Between approximately August 31, 2016 and November 25, 2016, an additional 30 payments, totaling approximately $31,400 were attempted via wire transfer from the Square Cash accounts of CC1 and CC2 to PREDEOUX's Square Cash account, but those transactions were declined by Square Cash due to the Square Cash app's $2,500 weekly account transfer limit.

17. I have reviewed records from INDIRA PREDEOUX's PNC Bank account ending in 7626. Those records included the following information:

   a. Between approximately September 2, 2016 and December 1, 2016, twelve cash deposits, totaling approximately $22,200, were made to PREDEOUX's PNC Bank account ending in 7626 at branches in Georgia, North Carolina and Florida, with each of these cash deposits being made after a failed Square Cash transfer by CC1 or CC2.

   b. Surveillance photographs were available showing the individuals who made eight of these cash deposits. From a driver's license photograph of CC1, I recognized CC1 as the person who made seven of those deposits, each in Georgia, totaling $18,200, including a $4,000 cash deposit on November 16, 2016 in Atlanta, Georgia, and, from a driver's license photograph of CC2, I recognized CC2 as the person who made one of those deposits, a cash deposit of $400 on October 27, 2016 in Greensboro, North Carolina.

   c. I learned from a representative of PNC Bank that the bank's computer servers are located in Virginia and, thus, by making the deposits outlined above at PNC Bank branches in Georgia and North Carolina, CC1 and CC2 caused those deposits to be transmitted by means of wire communication in interstate commerce through a PNC Bank server in Virginia.

18. I have reviewed records received from AT&T Mobility for the phone number ending in 3202, a phone number subscribed to INDIRA PREDEOUX. Those records showed the following contacts with 973-207-2645, a T-Mobile cell phone number subscribed to a company owned by CC1, and 336-912-2286, an AT&T Wireless cell phone number that was used for various accounts of CC2 and is listed as a number for CC2 in CC1's iCloud contact list:

   a. Between approximately July 25, 2016 and December 7, 2016, PREDEOUX's phone number had approximately 108 calls and 2,372 text messages with 336-912-2286;

   b. Between approximately October 14, 2016 and December 12, 2016, PREDEOUX's phone number had approximately 19 calls and 1,149 text messages with 993-207-2645.

19. I have reviewed records from other financial institutions from which A.N. and H.S. obtained credit shortly after INDIRA PREDEOUX altered their TransUnion credit history. These records show that A.N. and H.S. obtained credit cards or lines of credit, failed to make payments on those cards or lines of credit, and the financial institution subsequently charged off those accounts:

| Individual Obtaining Credit | Date TransUnion Data was Altered | Creditor | Account Type | Credit Limit | Amount of Charge Off |
|---|---|---|---|---|---|
| A.N. | 12.01.16 | Barclays Bank | Credit card | $7,000 | $8,507 |
| A.N. | 12.01.16 | Barclays Bank | Credit card | $10,000 | $11,266 |
| A.N. | 12.01.16 | Navy FCU | Credit card | $24,000 | $25,221 |
| A.N. | 12.01.16 | Regions Bank | Unsecured Loan | $25,150 | $23,472 |
| A.N. | 12.01.16 | Regions Bank | Credit card | $15,000 | $15,060 |
| H.S. | 12.05.16 | Regions Bank | Credit card | $11,000 | $11,000 |

20. I have reviewed records from financial institutions from which other individuals obtained credit shortly after INDIRA PREDEOUX altered their TransUnion credit histories. Many of these records show that a number of these individuals obtained credit cards or lines of credit, failed to make payments on those cards or lines of credit, and the financial institution subsequently charged off those accounts, including the following:

| Individual Obtaining Credit | Date TransUnion Data was Altered | Creditor | Account Type | Credit Limit | Amount of Charge Off |
|---|---|---|---|---|---|
| T.B. | 11.01.16 | USAA FSB | Credit card | $20,000 | $21,176 |
| S.B. | 12.01.16 | Navy FCU | Credit card | $24,000 | $26,020 |
| S.C. | 09.02.16 | Navy FCU | Credit card | $21,300 | $22,638 |
| L.C. | 11.15.16 | Pentagon FCU | Unsecured loan | $20,000 | $18,731 |
| L.C. | 11.15.16 | Pentagon FCU | Credit card | $5,000 | $5,691 |
| L.C. | 11.15.16 | USAA FSB | Credit card | $20,000 | $21,617 |
| A.D. | 11.22.16 | Navy FCU | Credit card | $24,000 | $24,764 |
| A.D. | 11.22.16 | Regions Bank | Credit card | $13,000 | $13,275 |
| S.D. | 09.02.16 11.23.16 | USAA FSB | Credit card | $3,000 | $4,135 |
| S.D. | 09.02.16 11.23.16 | Navy FCU | Credit card | $25,000 | $24,982 |
| S.D. | 09.02.16 11.23.16 | Regions Bank | Unsecured loan | $20,000 | $19,313 |
| E.F. - Aquiclean | 11.07.16 | Navy FCU | Credit card | $25,000 | $25,329 |
| C.H. | 11.17.16 | Navy FCU | Credit card | $24,000 | $25,526 |
| M.R.J. – C.S.S. | 11.21.16 | Navy FCU | Credit card | $24,000 | $24,875 |
| K.O.P. | 09.01.16 | Navy FCU | Credit card | $24,000 | $25,470 |
| W.J.S. | 11.21.16 | Synchrony Bank | Credit card | $6,000 | $6,062 |
| W.J.S. | 11.21.16 | Synchrony Bank – TJ Maxx | Credit card | $3,000 | $3,719 |
| L.T. | 09.02.16 11.22.16 | Capital One – Neiman Marcus | Credit card | $2,200 | $2,776 |

21. Based on the above facts, there is probable cause to believe that INDIRA PREDEOUX conspired to commit, committed, and aided and abetted, wire fraud, in violation of 18 U.S.C. §§ 371, 1343 and 2.

/s T. Sean Norman
T. Sean Norman
Special Agent
Federal Bureau of Investigation

Sworn and Subscribed before me
This 5thof November 2021

/s Honorable Carol S. Moore Wells
HONORABLE CAROL S. MOORE WELLS
*United States Magistrate Judge*